**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

MISAEL CORDERO,                                           :
                                                          :
               Plaintiff,                  :        Civ. No. 17-1596 (PGS) (DEA)
                                                          :
        v.                                        :        MEMORANDUM AND ORDER
                                                          :        GRANTING SUMMARY JUDGMENT
                                                          :        IN FAVOR OF DEFENDANTS
GREGORY KELLEY, et al.,                                   :        BRUCE DAVIS AND
                                                          :        GREGORY KELLEY
               Defendants.                 :
_____:

## I.  INTRODUCTION

Plaintiff, Misael Cordero ("Plaintiff" or "Cordero"), is a state prisoner proceeding with a

civil rights complaint alleging purported violations of the First Amendment and the Religious

Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Presently pending before this

Court is Defendants Bruce Davis and Gregory Kelley's (hereinafter the "Moving Defendants")

motion for summary judgment (*See* ECF 56). For the following reasons, Moving Defendants'

motion is granted.

## II.  SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing

law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from

granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

2

### III.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was incarcerated at the New Jersey State Prison ("NJSP") from 2014 to 2019. (*See* ECF 56-6 at 3). While Plaintiff is now incarcerated at the East Jersey State Prison, his allegations relate to circumstances arising while he was incarcerated at NJSP. (*See* ECF 56-5 at 3). Defendant Kelley is a mailroom officer at NJSP while Defendant Davis is the administrator of the NJSP. (*See* ECF 56-9 at 3; ECF 56-5 at 8). Plaintiff filed his initial complaint in this Court in March, 2017. (*See* ECF 1). In August, 2018, this Court screened Plaintiff's complaint. (*See* ECF 16). This Court noted as follows in that screening opinion:

> 1.      Plaintiff alleges that Officer Kelley confiscated religious tracts Plaintiff purchased to give to his family and friends. Officer Kelley allegedly stated the tracts were "not authorized for retention or receipt" and that "'[a]ll religious material for distribution must go through chaplains office.'" Compl. ¶ 8 (alteration in original).
>
> 2.      Plaintiff had previously purchased similar tracts without problems. *Id.* ¶ 7. He alleges there is no policy that requires religious pamphlets to go through the chaplain's office. *Id.* ¶ 9. He further states the pamphlets were for friends and family, not distribution within the prison. *Id.* ¶ 11.
>
> 3.      Plaintiff appealed the confiscation to Administrator D'llio[1] on March 19, 2015. *Id.* ¶ 12. Plaintiff alleges Administrator D'llio did not respond to his appeal, so he filed an inquiry form requesting a decision. *Id.* ¶¶ 14-15. The response to the inquiry form stated that religious pamphlets had to go through the chaplain's office. *Id.* ¶ 15.
>
> 4.      Plaintiff alleges Administrator D'llio purposely failed to respond to his grievances to prevent him from exhausting his administrative remedies. He claims he lost a meritorious claim in the New Jersey Superior Court, Appellate Division.
>
> 5.      Plaintiff alleges defendants violated his First Amendment rights to practice his religion. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To make out a claim for denial of an individual's free exercise rights under the First Amendment, an individual must

---

[1] Davis has since replaced D'Ilio as a Defendant in this action.

allege the regulation impinges on a sincerely held religious belief. *DeHart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000) (en banc).

6.          Construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, he has sufficiently alleged a First Amendment claim against defendants. This claim shall proceed.

7.          Plaintiff also claims a violation of RLUIPA, 42 U.S.C. § 2000cc-1 et seq. "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]'" *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (quoting 42 U.S.C. § 2000cc–5(7)(A)). RLUIPA provides "'greater protection' for religious liberty than is provided by the First Amendment. . . . [C]ourts must be careful not to import reasoning from cases such as *Turner* involving First Amendment rights." *Payne v. Doe*, 636 F. App'x 120, 124 (3d Cir. 2016) (per curiam) (citing *Hobbs*, 135 S. Ct. at 863) (internal citation omitted). Construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, he has sufficiently alleged a RLUIPA against defendants. This claim shall also proceed.

(ECF 16 at 1-3).

After screening, discovery in this case included the deposition of Plaintiff. Plaintiff indicated in his deposition that his religious beliefs require he bring the Word of God and salvation to his friends and family. (*See* ECF 65 at 7). While incarcerated at NJSP, Plaintiff ordered religious pamphlets to be sent to him at NJSP so that he could send them to his family. (*See* ECF 56-5 at 6). During Plaintiff's deposition, he further admitted though he could send the pamphlets directly to his family rather than first to him at NJSP, but at a higher cost. (*See id.* at 9-10).

According to Moving Defendants, inmates at NJSP cannot receive bulk religious mailings through the mailroom, but they can have them sent to the chaplain of NJSP for review and distribution. (*See* ECF 56-10 at 5). The issue presented in this case is the seizure of Plaintif's bulk religious pamphlets by Kelley.

After the close of discovery, Moving Defendants filed a motion for summary judgment. Plaintiff then filed his initial response to the motion for summary judgment. (*See* ECF 65). After Moving Defendants were ordered to serve Plaintiff with a full copy of his deposition transcript

4

(*see* ECF 71) and complied (*see* ECF 72), Plaintiff filed a subsequent response in opposition to

Moving Defendants' motion for summary judgment. (*See* ECF 73). Moving Defendants then

submitted a reply brief (*see* ECF 77) and Plaintiff subsequently filed a sur-reply. (*See* ECF 79).

## IV.    DISCUSSION

As previously discussed, Plaintiff is proceeding against the Moving Defendants both

under RLUIPA and the First Amendment's Free Exercise Clause.

### A.  RLUIPA

RLUIPA "provide[s] very broad protection for religious liberty. *See Holt v. Hobbs*, 574

U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)).

RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious

exercise of a person residing in or confined to an institution, ... even if the burden results from a

rule of general applicability," unless the government can satisfy strict scrutiny. *See* 42 U.S.C. §

2000cc-1(a). This requires a showing that the burden imposed on a person's religious exercise "is

in furtherance of a compelling governmental interest" and "is the least restrictive means of

furthering that compelling governmental interest." § 2000cc-1(a)(1)-(2). Even prior to the United

States Supreme Court decision in *Holt*, courts recognized in the prison context that RLUIPA

provides greater protections than the First Amendment. *See Colvin v. Caruso*, 605 F.3d 282, 296

(6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006)).

Under RLUIPA's burden shifting framework, a plaintiff must first show that the

defendant has placed a substantial burden on the plaintiff's sincerely held religious belief. *See*

*Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007). In *Washington*, the Third Circuit

noted that:

> [f]or the purposes of RLUIPA, a substantial burden exists where:
> 1) a follower is forced to choose between following the precepts of
> his religion and forfeiting benefits otherwise generally available to
> other inmates versus abandoning one of the precepts of his religion
> in order to receive a benefit; OR 2) the government puts substantial

> pressure on an adherent to substantially modify his behavior and to
> violate his beliefs.

497 F.3d at 280 (3d Cir. 2007); *see also Shelley v. Metzger*, 832 F. App'x 102, 105 (3d Cir.

2020). Furthermore, as aptly noted by Chief Judge Wolfson:

> [t]he Supreme Court has explained, however, that the question of
> whether an authentic religious belief has been substantially
> burdened under RLUIPA does not permit consideration of whether
> the plaintiff may still exercise his religious beliefs in other ways.
> *See Holt*, 135 S. Ct. at 862. "RLUIPA's 'substantial burden'
> inquiry asks whether the government has substantially burdened
> religious exercise, not whether the RLUIPA claimant is able to
> engage in other forms of religious exercise." *Id.* (parenthetical
> omitted).

*Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 542 (D.N.J. 2019).

Moving Defendants argue Plaintiff can order smaller quantities of religious pamphlets to

himself and then send them to his family and friends so long as they are not in bulk quantities.

Indeed, in his deposition, Plaintiff admitted there had never been a time where he ordered less

than a hundred pamphlets that were rejected as a bulk order. (*See id.* at 13). Nevertheless,

Plaintiff argues he should have been able to keep some of the pamphlets from his bulk order

rather than all of them being confiscated. Even if this were so, Moving Defendants also argue

Plaintiff's religious beliefs are not substantially burdened by the bulk mail policy because

Plaintiff can still send and receive pamphlets. Plaintiff can simply order pamphlets and have

them sent directly to his friends and family rather than have them shipped to him at NJSP and

then have him ship them out. Indeed, Plaintiff has taken advantage of this alternative before by

donating a bulk order to a woman who has a ministry in Florida. (*See* ECF 72 at 10).

In *Marsh v. Granholm*, No. 05-134, 2006 WL 2439760, at \*10 (W.D. Mich. Aug. 22,

2006), the court determined that a prison's restriction on bulk mailing did not substantially

burden an inmate's exercise of his religion. In *Marsh*, an inmate alleged the only way he could

obtain the items necessary to practice his Wiccan religion was from purchasing them through a

bulk mail catalog from Azure Green. *See id.* However, the Western District of Michigan granted

summary judgment for the defendants noting that Marsh failed to show that the only way he

could obtain the desired items was through Azure Green. *See id.* Furthermore, the *Marsh* court

determined the fact that the plaintiff could not obtain catalogs, without more, was insufficient to

show a substantial burden on the plaintiff's Wiccan religion. *See id.*

More recently, in *Czekalski v. Hanks*, No. 18-592, 2020 WL 7231358 (D.N.H. Dec. 8,

2020), the District of New Hampshire also determined a prison's prohibition on bulk mail did not

substantially burden a prisoner's exercise of religion under RLUIPA. In that case, the District of

New Hampshire found that an inmate failed to explain how the inability to receive mail catalogs

substantially burdened his religious practices. For example, the court noted a Rabbi visitor was

permitted to print out copies of the catalogs the inmate wanted. *See id.* at *20.

This Court finds these two cases persuasive. Indeed, Plaintiff's case is perhaps even one

step removed from these two cases as Plaintiff was able to obtain numerous copies of the

pamphlets for distribution (albeit perhaps at lesser quantities than Plaintiff would like). NJSP's

prohibition on bulk mail did not force Plaintiff to choose between following the precepts of his

religion and forfeiting benefits otherwise generally available to other inmates versus abandoning

one of the precepts of his religion in order to receive a benefit. Indeed, Plaintiff failed to show he

could not obtain numerous copies of pamphlets so that he could distribute them himself or that

he could order the pamphlets and have them sent directly to his friends and family to support his

religious exercise. Furthermore, the prohibition on bulk mail did not put substantial pressure on

Plaintiff to modify his behavior and violate his beliefs. *See Washington*, 497 F.3d at 280.

Accordingly, Moving Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.[2]

    B.  First Amendment – Free Exercise

Plaintiff next asserts his First Amendment Free Exercise Clause rights have been violated. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. To make out a claim for denial of an individual's free exercise rights under the First Amendment, an individual must allege the regulation impinges on a sincerely held religious belief. *See DeHart v. Horn*, 227 F.3d 47, 51–52 (3d Cir. 2000) (en banc).

The Court considers four factors in assessing the overall reasonableness of a prison regulation: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89–91.

Moving Defendants do not contest that Plaintiff has asserted a sincerely held religious belief. However, they argue they are entitled to summary judgment based on the *Turner* factors. The First Amendment imposes similar, but less strict standards on prison administrators than

---

[2] Given that there is no material issue of fact that Plaintiff's exercise of his religion was substantially burdened by the bulk mail policy, this Court need not analyze Moving Defendants' other arguments as to why they are entitled to summary judgment on Plaintiff's RLUIPA claim.

RLUIPA. *See Turner v. Coupe*, 655 F. App'x 47, 49-50 (3d Cir. 2016) (citing *Turner*, 482 U.S. at 89). Accordingly, courts have noted that where there is no material issue of fact on a RLUIPA claim, a plaintiff's First Amendment free exercise claim typically fails as well. *See, e.g.*, *Watson v. Christo*, Nos. 16-433, 17-351, 2019 WL 1324941, at *6 (D. Del. Mar. 25, 2019), *aff'd*, No. 19-2737, 2020 WL 7054443 (3d Cir. Dec. 2, 2020); *see also Lister v. Allen Oakwood Corr. Inst.*, No. 19-1583, 2020 WL 1140071, at *4 (N.D. Ohio Mar. 9, 2020) (noting plaintiff's free exercise claim fails because RLUIPA provides broader protections for religious liberty than the First Amendment); *Al-Kadi v. Ramsey Cty.*, No. 16-2642, 2019 WL 2448648, ag *12 (D. Minn. June 12, 2019) (citing *Van Wyhe v. Reisch*, 581 F.3d 639, 657-58 (8th Cir. 2009) (noting because plaintiff's RLUIPA claim on being forced to wear a bedsheet instead of a hijab failed, any free exercise claim also fails); *French v. Maryland Div. of Corr.*, Nos. 11-2124, 11-3301, 2013 WL 1104995, at *8 (D. Md. Mar. 15, 2013) (noting because statutory violation of RLUIPA involves same threshold issues of a free exercise claim, plaintiff's free exercise claim also fails). Nevertheless, for purposes of completeness, this Court will analyze Plaintiff's free exercise claim under the *Turner* factors as well despite there being no material issue of fact remaining on Plaintiff's more strict RLUIPA claim.

In applying the *Turner* factors, this Court is mindful that it must:

> give "considerable deference" to the "determinations of prison administrators who, in the interests of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); *Falls v. Nesbitt*, 966 F.2d 375, 379 (8th Cir.1992). This deference is accorded to prison administrators because the realities of running a penal institution are complex, and the courts are illequipped to deal with problems of prison administration and reform. *Jones*, 433 U.S. at 126. The *Turner* court observed that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are the province of the legislative and executive branches of government." 482 U.S. at 84–85.

*Hughbanks v. Dooley*, No. 10-4064, 2012 WL 346673, at *9 (D.S.D. Feb. 2, 2012). In

*Hughbanks*, the District of South Dakota noted numerous cases where courts have upheld bulk

mail bans under the First Amendment. Indeed, that court stated as follows:

> A number of courts have upheld prison bans on bulk-rate mail and
> catalogs, finding they were reasonably related to legitimate
> penological interests such as the security of the prison, allocation
> of resources, and preventing fire hazards. *See Jones,* 503 F.3d at
> 1159–60 (noting that plaintiff likely had not met his burden of
> demonstrating that a county jail's catalog ban was unconstitutional,
> but remanding to district court for *Turner* analysis); *Sheets v.
> Moore,* 97 F.3d 164, 168 (6th Cir.1996) (upholding a ban on bulk-
> rate mail); *Allen v. Deland,* 42 F.3d 1406 (10th Cir.1994)
> (upholding prison policy banning catalogs); *Hrdlicka v. Cogbill,*
> No. 04–3020, 2006 WL 2560790 at *11 (N.D. Cal. Sept.1, 2006)
> (upholding prison policy banning bulk-rate mail and prison
> officials' decision not to deliver magazine pursuant to that policy);
> *Dixon v. Kirby,* 210 F.Supp.2d 792, 801 (S.D.W.Va.2002)
> (upholding ban on bulk-rate mail and catalogs); *Allen v. Wood,* 970
> F. Supp. 824, 829–30 (E.D.Wash.1997) (upholding prison policy
> banning catalogs); *Alcala v. Calderon,* No. 95–3329, 1997 WL
> 446234 at *6 (N.D. Cal. July 24, 1997) (upholding prison ban on
> bulk-rate mail); *Kalasho v. Kapture,* 868 F. Supp. 882, 888
> (E.D.Mich.1994) (upholding prison policy banning the delivery of
> bulk-rate mail to inmates).

*Hughbanks*, 2012 WL 346673, at *9. Nevertheless, the District of South Dakota also noted other

courts which have decided these cases differently as stated below:

> Hughbanks relies on contrary authority, which comes primarily
> from the Ninth Circuit Court of Appeals. *See Prison Legal News v.
> Lehman,* 397 F.3d 692,701 (9th Cir.2005) (holding that prison ban
> on bulk-rate mail and catalogs violated the First Amendment);
> *Prison Legal News v. Cook,* 238 F.3d 1145, 1149–50 (9th
> Cir.2001) (holding that prison regulation banning the receipt of
> subscription nonprofit mail based on the postal service rate was not
> rationally related to a legitimate penological objective); *Morrison
> v. Hall,* 261 F.3d 896, 905 (9th Cir.2001) (holding prison
> regulation banning bulk-rate mail was unconstitutional as applied
> to for-profit subscription publications); *Allen v. Higgins,* 902 F.2d
> 682, 684 (8th Cir.1990) (holding prison official was not entitled to
> qualified immunity because he denied an inmate's request to mail a
> money order for a government catalog without examining the
> catalog); *Brooks v. Seiter,* 779 F.2d 1177, 1181 (6th Cir.1985)
> (holding that an inmate's complaint that pamphlets, magazines, and
> catalogs were not delivered was not frivolous). Because there is a

> split in authority and no controlling precedent from the Eighth
> Circuit, this court will independently analyze the constitutionality
> of the DOC correspondence policy ban on bulk-rate mail.

*Hughbanks*, 2012 WL 346673, at *8–9.

Defendants argue *Turner*'s first factor weighs in their favor. They claim there is a logical connection between the bulk mail restriction and legitimate penological interests. Most notably, Moving Defendants state they are concerned with an inmate receiving bulk religious pamphlets individually rather than through the chaplain because an inmate who receives and distributes such material may be seen as a spiritual leader with heightened authority which could affect the power dynamic inside the prison. Furthermore, because an inmate can receive religious material through the chaplain's office, Moving Defendants state this shows the policy was meant to address penological concerns, rather than necessarily restricting one's religious practice. (*See* ECF 56-2 at 27-28).

"Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of prisoners. *Bell v. Wolfish,* 441 U.S. 520, 546 (1979). "Such considerations are peculiarly within the province and professional experience of corrections officials, and, in the absence of substantial evidence in the record that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell*, 417 at 827. With respect to analyzing the first *Turner* factor, the Third Circuit has noted the following:

> the prison has the burden of demonstrating the First *Turner* Factor.
> *See Waterman,* 183 F.3d at 218 n. 9; *Wolf v. Ashcroft,* 297 F.3d
> 305, 308 & n. 2 (3d Cir.2002). This burden is slight, and in certain
> instances, the connection may be a matter of common sense. *Wolf,*
> 297 F.3d at 308. Second, if the prison meets its burden under the
> First *Turner* Factor, then we consider the Other *Turner* Factors.
> *See Waterman,* 183 F.3d at 218 n. 9; *Wolf,* 297 F.3d at 308 & n. 2;
> *see also Jones v. Brown,* 461 F.3d 353, 360 (3d Cir.2006).

*Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012).

This Court finds Defendants have met their slight burden under the first *Turner* factor. The explanation in prohibiting direct bulk religious mailings to inmates as necessary to maintain safety and security of the prison meets Moving Defendants' burden.

Moving Defendants also assert the second *Turner* factor weighs in their favor. They note Plaintiff can still exercise his right to distribute his religious pamphlets to his family and friends to support his exercise of his religion. Most notably, Plaintiff can order smaller quantities or even send the materials directly to his family and friends from the distributor. (*See* ECF 56-2 at 28). Indeed, Plaintiff has taken advantage of these alternatives which still allow Plaintiff to exercise his religious belief of distributing the Word of God to family and friends. This Court agrees with Moving Defendants that this factor favors them.

Next, Moving Defendants assert *Turner*'s third factor also weighs in their favor. They claim changing the bulk mail restriction would negatively impact other inmates. More specifically, distribution of religious materials within the prison can create power imbalances among inmates. While Plaintiff states he does not intend to distribute the religious pamphlets, Moving Defendants note there is no way for them to ensure that is the case. This Court agrees and finds this factor too weighs in Moving Defendants favor.

Finally, Moving Defendants argue there are no additional alternatives that would accommodate Plaintiff's right at *de minimus* cost. Plaintiff suggests a less restrictive alternative would be to permit him to receive a certain quantity of religious tracts – instead of a complete prohibition. (*See* ECF 65 at 17-18). However, as the record in this case indicates, this is precisely what has been permitted. Indeed, Plaintiff admits he has never had an order of less than 100 pamphlets confiscated. Accordingly, this factor weighs in Moving Defendants favor.

As the above discussion indicates, the *Turner* factors weigh in favor of Defendants. Given this, Defendants are also entitled to summary judgment on Plaintiff's free exercise claim.

## V.      CONCLUSION

For the foregoing reasons, Moving Defendants' motion for summary judgment is granted.

### ORDER

For the reasons discussed in the Memorandum filed herewith:

IT IS this 1st day of March, 2021,

ORDERED Defendants' motion for summary judgment (ECF 56) is granted and

judgment is entered in favor of Defendants in this action; and it is further

ORDERED the Clerk shall serve this order and the accompanying opinion on Plaintiff by

regular U.S. mail; and it is further

ORDERED the Clerk mark this case as closed.


s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

13