Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| MISAEL CORDERO, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 17-1596 (PGS)(DEA) |
| | : | |
| v. | : | |
| | : | |
| GREGORY KELLEY, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

_____ :

## PETER G. SHERIDAN, U.S.D.J.

### I.  INTRODUCTION

Plaintiff, Misael Cordero ("Plaintiff"), is a state prisoner currently incarcerated at the East Jersey State Prison ("EJSP") in Rahway, New Jersey. He is proceeding *pro se* with a civil rights complaint against the following Defendants Gregory Kelley ("Kelley"), Stephen D'Illio ("D'Illio"), and Bruce Davis ("Davis") (hereinafter "Defendants"). (ECF No. 1.) Presently pending before this Court is Defendants' second motion for summary judgment (ECF No. 108), Plaintiff's response (ECF No. 109), Defendants' reply (ECF No. 112), and Plaintiff's sur-reply (ECF No. 113-1). Plaintiff has also filed a motion for appointment of counsel (ECF No. 105) and a motion to for leave to file his sur-reply (ECF No. 113). For the following reasons, the motion for summary judgment is granted in part and denied in part. Plaintiff's

motion for leave to file a sur-reply is granted and Plaintiff's sur-reply is accepted for filing. Finally, Plaintiff's motion for appointment of counsel is denied as moot.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was incarcerated at New Jersey State Prison ("NJSP") from July 1994 through July 2019. (ECF No. 108-20, Def. Stat. of Mat. Facts ("DSOMF"), ¶ 1.) Plaintiff is currently housed in East Jersey State Prison, but his allegations pertain to his incarceration in NJSP. (*Id.* ¶ 2). At all relevant times, Defendant Kelley was mailroom officer at NJSP. (*Id.* ¶ 3.) Defendant Davis is the current administrator at NJSP. (*Id.* ¶ 4.) Plaintiff filed his complaint in this Court in March 2017 raising a Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) ("RLUIPA") claim, a Free Exercise Clause of the First Amendment claim, and a right of access to the courts claim. (ECF No. 1.) Plaintiff sued Defendants in their individual and official capacities, seeking injunctive and declaratory relief and damages. (*See id.*)

In his complaint, Plaintiff alleges that Defendant Kelley confiscated religious tracts Plaintiff purchased to give to family and friends. Defendant Kelley stated that the tracts were "not authorized for retention or receipt" and that "[a]ll religious material for distribution must go through chaplains' office." (*Id.* ¶ 8.) Plaintiff submitted that he had previously purchased similar tracts without problems. (*Id.* ¶ 7.) Plaintiff also stated the religious materials were for friends and family, not

distribution within the prison. (*Id.* ¶ 11.) Plaintiff appealed the confiscation to Defendant D'Ilio, who failed to respond. (*Id.* ¶¶ 12, 14.) Plaintiff filed an inquiry form. The response to the inquiry form stated that religious pamphlets had to go through the chaplain's office. (*Id.* ¶¶ 15-16.)

In August 2018, this Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), dismissing with prejudice Plaintiff's claim for money damages against Defendants in their official capacities and dismissed his access-to-the-courts claim without prejudice for failure to state a claim.[1] (ECF No. 16.) On June 12, 2020, Defendants filed their first motion for summary judgment seeking dismissal of Plaintiff's remaining RLUIPA and First Amendment claims. (ECF No. 56.) On March 1, 2021, following briefing by the parties, the Court filed a Memorandum and Order granting Defendants' first motion for summary judgment and dismissing Plaintiff's remaining RLUIPA and First Amendment claims. (ECF No. 81.)

Plaintiff appealed to the Third Circuit Court of Appeals. (ECF No. 82.) On February 15, 2022, the Third Circuit issued an order which affirmed-in-part and vacated-in-part the Court's March 1, 2021, Memorandum and Order. (*See* ECF No. 87.) The Third Circuit affirmed this Court's dismissal of Plaintiff's access-to-the-

---

[1] The Court also substituted Defendant Warden Bruce Davis, in his official capacity, for D'Ilio since D'Ilio was no longer administrator of NSJP. (ECF No. 16 at 4, citing Fed. R. Civ. P. 25(d).)

courts claim and Plaintiff's claims for injunctive and declaratory relief under RLUIPA and the First Amendment. (*See* ECF No. 87-2.) The Third Circuit remanded Plaintiff's First Amendment claim for damages, finding that based on the record there was a genuine issue of material fact regarding the existence of a policy on bulk religious material. (*Id.* at 7.) The Third Circuit explained that if, with a more developed record, this Court finds Defendant Kelly was acting in accordance with policy, the Court could consider whether the application of that policy to Plaintiff ran afoul the First Amendment. (*Id.* at 8.) The Third Circuit also noted that while the Court did not Defendants' qualified immunity and exhaustion arguments, it was free to do so on remand. (*Id.* at 8, fn. 6.)

Following a conference with the Court and the parties exchange of additional discovery, Defendants filed the instant motion for summary judgment arguing for dismissal of Plaintiff's First Amendment Free Exercise of Religion claim. (ECF No. 108.) Plaintiff opposes Defendants' motion for summary judgment. (ECF No. 109.)

Both parties have submitted statement of material facts and Plaintiff submitted a declaration. The following facts are drawn from those statements.

Plaintiff's religious beliefs require that he bring the Word of God and the way to salvation to the attention of others, and specifically, to family members and friends. (DSOMF ¶ 28.) Plaintiff performs this duty by buying Christian tracts and providing them to friends and family. (ECF No. 109-4, Plaintiff's Declaration in

Opposition ("Pl. Decl.") ¶ 3.) While incarcerated, Plaintiff ordered religious pamphlets, or religious tracts to read them, and to send them to his family. (DSOMF ¶ 29.) Plaintiff previously ordered and received larger quantities of Christian tracts, receiving 100 tracts in 2008, 250 in 2009, 460 in 2010, and 370 in 2012. (Pl. Decl. ¶ 8.) In March of 2015, Defendant Kelley confiscated Plaintiff's order of Christian tracts that arrived in the prison mailroom. (*Id.* ¶ 10.) The inmate receipt, contraband seizure form indicates that on March 18, 2015, 345 religious pamphlets were confiscated because "all religious material of distribution must go through chaplain's office." (ECF No. 109-8.) In December 2016, Defendant Kelley returned Plaintiff's bulk religious tracts to the sender, noting that religious materials sent in bulk to inmate for distribution to other inmates must be approved by the chaplain's office and must be sent in care of the chaplain. (ECF No. 109-10 at 2.) In January 2017, Defendant Kelley returned Plaintiff's bulk religious material to sender, noting Plaintiff could not order "multiple copies" of religious material for "dissemination to others" and Plaintiff "must have materials sent to the chaplain's office for distribution." (*Id.* at 3.)

Plaintiff acknowledges he can order pamphlets from publishers directly to his family and friends, but states that he cannot because he does not have the money to pay for the process, handling, and shipping of dozens of individual orders. (DSOMF ¶ 34; ECF No. 109-3, Pl. Stat. of Mat. Facts ("PSOMF") ¶ 26.) Plaintiff has never

ordered less than a hundred pamphlets and had the order rejected. (DSOMF ¶ 35.) Plaintiff submits that he has never had an order of Christian tracts rejected by anyone, other than by the Defendants. (PSOMF ¶ 27.)

Defendants' motion for summary judgment is now briefed and ready for disposition.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any

material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV.  DISCUSSION

Defendants argue Plaintiff's remaining First Amendment Free Exercise of Religion claim should be dismissed.

### A.  First Amendment- Free Exercise

Plaintiff argues that his First Amendment Free Exercise Clause rights have been violated.  The law applicable to prisoners' Free Exercise claims is well-settled. Although prisoners "clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion," *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), at the same time, "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50-5 1 (3d Cir. 2000) (citing *Fell v. Procunier*, 417 U.S. 817, 822-23 (1974)). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *See Fell*, 417 U.S. at 822.

Two threshold requirements must be met before particular beliefs, alleged to be religious in nature, are accorded First Amendment protection. *Africa v.*

*Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981). The beliefs avowed must be (1) sincerely held, and (2) religious in nature. *Id.* If both of these requirements are met, the Court must then apply the four factors set out by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), for assessing prison regulations that restrict inmates' constitutional rights. *Fraise v. Terhune*, 283 F.3d 506, 513 (3d Cir. 2002). These factors require courts to consider: (1) whether the regulation bears a 'valid, rational connection' to a legitimate and neutral government objective; (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives." *Turner,* 482 U.S. at 89–90.

As the Third Circuit has observed, *Turner* did not expressly state which party bears the burden of proving each of these four factors. *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Thus, the Third Circuit has developed a two-step, burden-shifting analysis under *Turner*:

> First, the prison has the burden of demonstrating the First *Turner* Factor. This burden is slight, and in certain instances, the connection may be a matter of common sense. Second, if the prison meets its burden under the First *Turner* Factor, then we consider the [Second, Third, and Fourth] *Turner* Factors.

*Sharp*, 669 F.3d at 156.

Defendants initially argue that Plaintiff has failed to show a sincerely held religious belief that he send and receive religious mail. (ECF No. 108-21 at 16-17.) Defendants note that Plaintiff asserts that his religious beliefs require him to bring the word of God and the way of salvation to his family and friends. (*Id.*) While Defendants do not challenge the sincerity of Plaintiff's religious beliefs, they argue Plaintiff's claim focuses on the quantity restrictions of religious publications, rather than his religious belief of spreading the word of God. (*Id.*) Defendants argue that Plaintiff's religious beliefs are unrelated to bulk mail and Plaintiff fails to explain why he cannot write to his family and friends to discuss the word of God, without including bulk religious pamphlets. (*Id.*)

Defendants' first argument fails to acknowledge portions of Plaintiff's sworn declaration. Plaintiff submits through his sworn declaration that he "must purchase Christian tracts containing specific subjects of the word of God based on the guidance that the Holy Spirit gives [him]." (Pl. Decl. ¶ 5.) Plaintiff asserts that the Christian tracts are "written by Christian theologians, and [he] cannot just buy and send out any kind [of] Christian tract[s] to the people that the Holy Spirit guides [him] to reach[,] [n]or can [he] substitute the spiritually chosen Christian tracts with [his] own words or [his] own chosen parts of the Holy Scriptures." (*Id.*) Plaintiff has provided a sworn declaration asserting that his sincerely held religious belief requires him to order particular religious tracts to send to family and he cannot use

his own words to spread the word of God. Plaintiff has asserted a sincerely held religious belief.

Thus, under *Turner*, we must determine first whether there was a prison policy of restricting bulk religious mailings and if there was a rational connection between said policy and a legitimate penological interest.

Defendants first submit that NJSP has a long-standing procedural practice/unwritten policy, that incarcerated persons may not receive bulk religious materials through NJSP mailroom. (DSOMF ¶ 15.) Defendants argue that the New Jersey State Prison Inmate Handbook from 2015 and 2016, instructed that all incoming publication material must be inspected by a custody state member to determine whether the items are permitted in both type and *amount*. (*Id.* ¶ 14, citing ECF No. 108-16 at 2-3, 16-17; ECF No. 108-17 at 3, 16.)

As evidence of NJSP's long-standing unwritten procedural practice, Defendants submit a sworn declaration of Jamal El-Chebli, a supervisor of chaplaincy services at NJSP. (ECF No. 108-6, El-Chebli Decl.) El-Chebli indicates that while he does not know if bulk religious materials have been received through NJSP in the past, at this time the procedure in place prohibits inmates from receiving bulk mailings of religious pamphlets through the mailroom at NJSP. (*Id.* ¶¶ 9, 16.) El-Chebli indicates that NJSP procedure allows an inmate to send the religious material through the chaplaincy at NJSP for review and distribution. (*Id.* ¶¶ 9-10.)

11

"When the chaplaincy approves bulk religious materials for distribution, the chaplaincy makes the material publicly available for general consumption." (*Id.* ¶ 15.)

Defendants also submit a sworn declaration of Elizabeth Gnam, a chaplain employed at NJSP. (ECF No. 108-12, Gnam Declar.) Chaplain Gnam indicates she has been employed at NJSP since 1988 and as far as she is aware from 1988 to present "inmates are not able to receive bulk mailing." (*Id.* ¶ 9.) Chaplain Gnam notes that although she is not aware of a written policy for the prison mailroom, she understands that this has been the procedure for bulk religious mail. (*Id.* ¶ 12.) Finally, Gnam explains that the current bulk religious mail policy described by Imam El-Chebli is consistent with her understanding of the policy from 1988 to present. (*Id.* ¶ 10.)

Defendants also submit a declaration from Defendant Kelley, in which he indicates that during his employment at NJSP, inmates were not permitted to receive bulk mailings of religious material. (ECF No. 108-12, Kelley Decl. ¶ 14.) Such material would need to be reviewed by the prison chaplaincy and could be distributed if appropriate. (*Id.*) Defendant Kelley submits that he was not aware of written policy, however, this was the procedure at NJSP during his time of employment. (*Id.* ¶¶ 16-17.) Religious materials that were sent in non-bulk quantities did not have to go through the prison chaplaincy for review and distribution. (*Id.* ¶ 18.) During the

12

time Defendant Kelley worked in the NJSP mailroom, officers had discretion to determine whether materials were in "bulk" because material varied in size, weight, single pages or packets, and other ways. (*Id.* ¶ 20.) The bulk restriction could also apply to items other than paper mail, such as religious necklaces or jewelry for distribution. (*Id.* ¶ 21.)

In further support that an unwritten procedure regarding bulk religious mailing existed, Defendants note that in accordance with already existing process, Return to Sender forms were created to document reasons for rejection in 2016. (DSOMF ¶ 16, citing Kelley Decl. ¶¶ 25-27.) Plaintiff received Return to Sender forms following the December 2016 and January 2017 confiscation of his bulk mailings, both of which indicated that religious materials sent in bulk were not permitted and must be sent to the Chaplain's office for distribution. (ECF No. 108-15.) Prior to the use of the Return to Sender form, Plaintiff received an Inmate Receipt, Contraband Seizure form following the March 2015 confiscation of his bulk mailing, which noted there were 345 religious pamphlets and all religious material for distribution must be sent through the Chaplain's office. (ECF No. 109-8.)

Plaintiff argues an issue of material fact exists as to whether there was an unwritten procedure/policy regarding bulk religious mailings. (ECF No. 109 at 11-12.) Plaintiff argues that in Defendants' answers to Plaintiff's interrogatories, Defendants "conceded that 'the [Department of Corrections ("DOC")] does not have

a specific policy, custom or practice of prohibiting incarcerated persons from receiving bulk religious literature.'" (*Id.* at 11, citing ECF No. 109-18 at 3.) Defendants have replied and argue that Plaintiff misrepresents the interrogatory question. (ECF No. 112 at 2.) Plaintiff's interrogatory question asked the date that NJSP's practice for prohibited bulk religious *literature* was enacted. (ECF No. 109-18 at 3 (emphasis added).) Defendants responded that the DOC does not have a specific policy, custom or practice prohibiting "bulk religious *literature*," but an inmate's possession of "bulk religious *materials*" is affected by N.J.A.C. 10A:17-5.2. (*Id.*) Defendants' interrogatory answer explained as follows:

> [A]n inmate's possession of bulk religious materials, such as religious tracts designed to proselytize individuals, touch upon the New Jersey Administrative Code's prohibition against proselytizing incarcerated persons. *See* N.J.A.C. 10A:17-5.2 (Religious proselytization of inmates sub section (a): No person shall disparage an inmate's religious beliefs or deliberately seek to persuade an inmate to change his or her religious affiliation.)

(ECF No. 109-18 at 3.) The Court does not view that interrogatory answer as an omission that there was no unwritten procedure regarding bulk religious materials in general.

However, and more importantly, Plaintiff argues that the evidence shows that prior to 2015 he received orders of 100 to 450 pamphlets. (ECF No. 109 at 13.) Plaintiff previously ordered and received larger quantities of Christian tracts, receiving 100 tracts in 2008, 250 in 2009, 460 in 2010, and 370 in 2012. (Pl. Decl.

¶ 8.) The Court notes that the fact that a procedure may not have been followed consistently does not show conclusively that the procedure did not exist. However, Defendants have failed to submit evidence that Plaintiff was denied any bulk religious mailing between 2008 and 2012. Therefore, the only evidence before the Court is that on each occasion Plaintiff ordered bulk religious mailings prior to 2015, he was able to receive the mailing through the prison mailroom.

Plaintiff has produced evidence that creates a genuine issue of material fact regarding whether the NJSP had an unwritten policy on how to handle bulk religious mailings in 2015 through 2017. As such, Defendants' motion for summary judgment is denied as to this issue.

### B. Qualified Immunity

As explained at length above, Plaintiff's First Amendment claim arises out of Defendants' confiscation of Plaintiff's bulk religious mailings received through the prison mailroom. Defendants contend they are entitled to qualified immunity because there is no law that clearly established that a prison cannot limit bulk religious mailings sent directly to an inmate through the prison mailroom.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a two-step inquiry into whether

qualified immunity applies: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), abrogated in part by *Pearson v. Callahan*, 555 U.S. 223 (2009). The court may grant qualified immunity on either of the two prongs. *See, e.g., Pearson*, 555 U.S. at 243-245 (evaluating only *Saucier's* second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

Defendants argue in their motion for summary judgment that even if the Court determines their actions were unlawful, there is no precedent that clearly establishes that restrictions on bulk religious materials received by prisoners violated a federal statutory or constitutional right. As such, the Court will assume for arguments sake that the Defendants violated Plaintiff's First Amendment right and will address the second prong of *Saucier* to determine if that right was clearly established.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018) (citations omitted). The Supreme Court reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). To determine if the "right at issue" was "clearly established" at the time of the alleged misconduct, the right at issue must be defined "at the appropriate level of

16

specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). However, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Courts "typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional." *Id.*

First, the Court must define the right at issue with the appropriate level of specificity. Here, Plaintiff's First Amendment right to receive bulk religious mailings is at issue. Plaintiff argues that this is not a case involving restrictions on "bulk" religious material. (ECF No. 109 at 22.) Plaintiff insists that this is a case involving prohibition of any number of Christian tracks because he was not given even one of the pamphlets in the confiscated mailings. (ECF No. 109.) However, Plaintiff does not argue, and the record does not support, that he ever ordered a singular Christian track that was confiscated. The fact that the entirety of the bulk religious materials were returned to sender, does not support the conclusion that if Plaintiff ordered one or even a small number of Christian tracts that they would have been confiscated. Plaintiff also argues that Defendant Kelley's failure to use the word "bulk" in the 2015 Inmate Receipt form, shows that was not his reason for confiscating the materials. (ECF No. 109 at 22.) Plaintiff's argument is unconvincing. Defendant Kelley explicitly indicated that there were "345 religious

pamphlets" and religious material for distribution must be sent through the Chaplain's office. (*See* ECF No. 109-8.) The wording makes it clear that Defendant is referring to bulk material. As such, the right at issue here is Plaintiff's First Amendment right to receive bulk religious mailings.

The Court must now determine if that right is "clearly established." Defendants argue there is no law providing that a prison cannot restrict bulk religious mailings being sent directly to the prisoner. (ECF No. 108-21 at 26-29.) They argue there is no law in the Third Circuit, or elsewhere, clearly establishing that a prisoner has a right to the receipt of bulk religious mail, particularly when the mail can be received through several alternate means, such as the prison chaplaincy. (*Id.* at 29.) Although not directly on point, Defendants note that the Supreme Court precedent addressing the right to receive bulk-rate mail found there was no First Amendment right to receive bulk-rate mail. *See Jones v. North Carolina Prisoners Labor Union, Inc.*, 433 U.S. 119 (1977) (upholding a prison regulation that prohibited prisoners from receiving bulk-rate mail from a prison union because of security and safety concerns). *Jones* is distinguishable from Plaintiff's case, as this case involves restrictions on bulk religious materials, not bulk mail in general, and prisoners have a First Amendment right to practice their religion. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Although general bulk mail restrictions are distinguishable from the case here, the Court still notes the case law on general bulk mail.

As noted by the Court previously, in *Hughbanks v. Dooley*, the District of South Dakota noted numerous cases where courts have upheld bulk mail bans under the First Amendment. No. 10-4064, 2012 WL 346673, at *9 (D.S.D. Feb. 2, 2012). Indeed, that court stated as follows:

> A number of courts have upheld prison bans on bulk-rate mail and catalogs, finding they were reasonably related to legitimate penological interests such as the security of the prison, allocation of resources, and preventing fire hazards. *See Jones [v. Salt Lake County],* 503 F.3d [1147], 1159–60 [(10th Cir. 2007)] (noting that plaintiff likely had not met his burden of demonstrating that a county jail's catalog ban was unconstitutional, but remanding to district court for *Turner* analysis); *Sheets v. Moore,* 97 F.3d 164, 168 (6th Cir.1996) (upholding a ban on bulk-rate mail); *Allen v. Deland,* 42 F.3d 1406 (10th Cir.1994) (upholding prison policy banning catalogs); *Hrdlicka v. Cogbill,* No. 04–3020, 2006 WL 2560790 at *11 (N.D. Cal. Sept.1, 2006) (upholding prison policy banning bulk-rate mail and prison officials' decision not to deliver magazine pursuant to that policy); *Dixon v. Kirby,* 210 F.Supp.2d 792, 801 (S.D.W.Va.2002) (upholding ban on bulk-rate mail and catalogs); *Allen v. Wood,* 970 F. Supp. 824, 829–30 (E.D.Wash.1997) (upholding prison policy banning catalogs); *Alcala v. Calderon,* No. 95–3329, 1997 WL 446234 at *6 (N.D. Cal. July 24, 1997) (upholding prison ban on bulk-rate mail); *Kalasho v. Kapture,* 868 F. Supp. 882, 888 (E.D.Mich.1994) (upholding prison policy banning the delivery of bulk-rate mail to inmates).

*Hughbanks*, 2012 WL 346673, at *9. Nevertheless, the District of South Dakota also noted other courts which have decided these cases differently as stated below:

> Hughbanks relies on contrary authority, which comes primarily from the Ninth Circuit Court of Appeals. *See Prison Legal News v. Lehman,* 397 F.3d 692,701 (9th

19

Cir.2005) (holding that prison ban on bulk-rate mail and catalogs violated the First Amendment); *Prison Legal News v. Cook,* 238 F.3d 1145, 1149–50 (9th Cir.2001) (holding that prison regulation banning the receipt of subscription nonprofit mail based on the postal service rate was not rationally related to a legitimate penological objective); *Morrison v. Hall,* 261 F.3d 896, 905 (9th Cir.2001) (holding prison regulation banning bulk-rate mail was unconstitutional as applied to for-profit subscription publications); *Allen v. Higgins,* 902 F.2d 682, 684 (8th Cir.1990) (holding prison official was not entitled to qualified immunity because he denied an inmate's request to mail a money order for a government catalog without examining the catalog); *Brooks v. Seiter,* 779 F.2d 1177, 1181 (6th Cir.1985) (holding that an inmate's complaint that pamphlets, magazines, and catalogs were not delivered was not frivolous). Because there is a split in authority and no controlling precedent from the Eighth Circuit, this court will independently analyze the constitutionality of the DOC correspondence policy ban on bulk-rate mail.

*Hughbanks,* 2012 WL 346673, at *8–9.

Regarding bulk religious materials, in *Sheets v. Moore,* the Sixth Circuit Court of Appeals upheld a prison policy that prisoners shall not be allowed to receive "free advertising material, fliers and other bulk rate mail except that received from a recognized religious organization sent in care of the institutional chaplain." 97 F.3d 164, 165 n.1 (6th Cir.1996). There the Sixth Circuit upheld a bulk rate mail prohibition when there was an exception that religious material could be sent to the chaplain. *Id.*

20

In response, Plaintiff fails to cite to any precedent from the Supreme Court or the Third Circuit Court of Appeals that addresses the unlawfulness of a prison's restriction on bulk religious mailing received by an inmate. Instead, Plaintiff argues that because the right to religious materials is established and there is no policy limiting the amount of religious material an inmate can receive, his constitutional right to receive bulk religious mailings was established. Plaintiff also argues that binding precedent is unnecessary because this is an obvious case of intentional and malicious denial of Plaintiff's constitutional rights to practice his religion. (*Id*. at 23, citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (holding "in an obvious case general standards can clearly establish a right without a body of relevant case law.")) However, while the regulations cited to by Plaintiff establish his right to receive and retain religious materials, those regulations do not specifically say that right is unlimited. Additionally, while Plaintiff alleges that Defendant Kelley acted maliciously, Defendant Kelley submitted a certification swearing that during the time he worked in the prison mailroom inmates were not permitted to receive bulk religious material and that he understood that "bulk religious mail was not to be treated differently based upon religion. (ECF No. 108-12, Kelley Decl. ¶¶ 14, 22.) As such, Plaintiff has failed to show that the regulations established a right to receive unlimited religious materials and that Defendant Kelley acted maliciously. Therefore, the Court does not view this as a rare "obvious" case, where the

unlawfulness of Defendants' conduct was so clear that is rendered existing precedent unnecessary to show that Plaintiff's right to receive bulk religious mailings is "clearly established."

Plaintiff does not cite, nor has the Court found, a published decision from the Supreme Court or the Third Circuit Court of Appeals holding that a restriction on bulk religious mailings sent to the prisoner violates the First Amendment. As such, it was not clearly established at the time Defendants restricted Plaintiff's receipt of bulk religious mailings that Defendants were violating Plaintiff's First Amendment right. Defendants are entitled to qualified immunity and their motion for summary judgment is granted.

## V. CONCLUSION

For the reasons expressed above, the Court will grant Defendants' motion for summary judgment.[2] (ECF No. 108.) Plaintiff's motion for appointment of counsel (ECF No. 105) is denied as moot. Plaintiff's motion for leave to file a sur-reply (ECF No. 113) and Plaintiff's sur-reply (ECF No. 113-1) is accepted for filing. An appropriate order follows.

April 20, 2023                            s/*Peter G. Sheridan*
                                          PETER G. SHERIDAN, U.S.D.J.

---

[2] As the Court is granting summary judgment to Defendants, it will not address Defendants' remaining argument that Plaintiff's First Amendment claim is unexhausted.